## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## MACON DIVISION

| | | |
|---|---|---|
| **CHRISTOPHER AARON VASS,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **VS.** | : | **NO. 5:22-CV-00243-MTT-CHW** |
| | : | |
| **WARDEN LAWRENCE** | : | |
| **WHITTINGHAM,** *et al.,* | : | |
| | : | |
| **Defendants.** | : | |
| | : | |

## ORDER AND RECOMMENDATION

Presently pending before the Court is a Complaint filed by *pro se* Plaintiff Christopher Aaron Vass, an inmate currently incarcerated at the Augusta State Medical Prison in Grovetown, Georgia, seeking relief pursuant to 42 U.S.C. § 1983 (ECF No. 1). Plaintiff has also moved for leave to proceed *in forma pauperis* (ECF No. 2) in this case and a motion to expunge any negative references from his prison record (ECF No. 5).   For the following reasons, Plaintiff's motion for leave to proceed *in forma pauperis* is **GRANTED,** and his deliberate indifference to safety claims against Defendants Brown and Whittingham, his conditions-of-confinement claims against Defendants Whittingham, King, and Burnette, and his retaliation claims against Defendant Brown shall proceed for further factual development.   It is **RECOMMENDED,** however, that Plaintiff's remaining claims be **DISMISSED without prejudice** and that his motion for expungement (ECF No. 5) be **DENIED as moot.**

## MOTION TO PROCEED *IN FORMA PAUPERIS*

Plaintiff seeks leave to proceed without prepayment of the filing fee or security therefor pursuant to 28 U.S.C. § 1915(a).   Plaintiff's submissions demonstrate that he is presently unable to pay the cost of commencing this action.   His application to proceed *in forma pauperis* (ECF No. 2) is therefore **GRANTED**.

However, even if a prisoner is allowed to proceed *in forma pauperis*, he must nevertheless pay the full amount of the $350.00 filing fee.   28 U.S.C. § 1915(b)(1).   If the prisoner has sufficient assets, he must pay the filing fee in a lump sum.   If sufficient assets are not in the account, the court must assess an initial partial filing fee based on the assets available.   Despite this requirement, a prisoner may not be prohibited from bringing a civil action because he has no assets and no means by which to pay the initial partial filing fee. 28 U.S.C. § 1915(b)(4).   In the event the prisoner has no assets, payment of the partial filing fee prior to filing will be waived.

Plaintiff's submissions indicate that he is unable to pay the initial partial filing fee. Accordingly, it is hereby **ORDERED** that his complaint be filed and that he be allowed to proceed without paying an initial partial filing fee.

### I.    Directions to Plaintiff's Custodian

Hereafter, Plaintiff will be required to make monthly payments of 20% of the deposits made to his prisoner account during the preceding month toward the full filing fee.   The clerk of court is **DIRECTED** to send a copy of this Order to Plaintiff's current place of incarceration.   It is **ORDERED** that the warden of the institution wherein

2

Plaintiff is incarcerated, or the sheriff of any county wherein he is held in custody, and any successor custodians, shall each month cause to be remitted to the Clerk of this Court twenty percent (20%) of the preceding month's income credited to Plaintiff's account at said institution until the $350.00 filing fee has been paid in full.   28 U.S.C. § 1915(b)(2). In accordance with provisions of the Prison Litigation Reform Act ("PLRA"), Plaintiff's custodian is hereby authorized to forward payments from the prisoner's account to the Clerk of Court each month until the filing fee is paid in full, provided the amount in the account exceeds $10.00.   It is **ORDERED** that collection of monthly payments from Plaintiff's trust fund account shall continue until the entire $350.00 has been collected, notwithstanding the dismissal of Plaintiff's lawsuit or the granting of judgment against him prior to the collection of the full filing fee.

## II.   Plaintiff's Obligations Upon Release

An individual's release from prison does not excuse his prior noncompliance with the provisions of the PLRA.   Thus, in the event Plaintiff is hereafter released from the custody of the State of Georgia or any county thereof, he shall remain obligated to pay those installments justified by the income to his prisoner trust account while he was still incarcerated.   The Court hereby authorizes collection from Plaintiff of any balance due on these payments by any means permitted by law in the event Plaintiff is released from custody and fails to remit such payments.   Plaintiff's Complaint may be dismissed if he is able to make payments but fails to do so or if he otherwise fails to comply with the provisions of the PLRA.

## PRELIMINARY REVIEW OF PLAINTIFF'S COMPLAINT

### I.      Standard of Review

The PLRA obligates the district courts to conduct a preliminary screening of every complaint filed by a prisoner who seeks redress from a government entity, official, or employee. *See* 28 U.S.C. § 1915A(a). Screening is also required under 28 U.S.C. § 1915(e) when the plaintiff is proceeding IFP. Both statutes apply in this case, and the standard of review is the same. When conducting preliminary screening, the Court must accept all factual allegations in the complaint as true. *Boxer X v. Harris*, 437 F.3d 1107, 1110 (11th Cir. 2006) *abrogated in part on other grounds by Wilkins v. Gaddy*, 559 U.S. 34 (2010); *Hughes v. Lott*, 350 F.3d 1157, 1159-60 (11th Cir. 2003). *Pro se* pleadings, like the one in this case, are "'held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed.'" *Hughes*, 350 F.3d at 1160 (citation omitted). Still, the Court must dismiss a prisoner complaint if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. §1915A(b).

A claim is frivolous if it "'lacks an arguable basis either in law or in fact.'" *Miller v. Donald*, 541 F.3d 1091, 1100 (11th Cir. 2008) (citation omitted). The Court may dismiss claims that are based on "'indisputably meritless legal'" theories and "'claims whose factual contentions are clearly baseless.'" *Id.* (citation omitted). A complaint fails to state a claim if it does not include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

4

(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   The factual allegations

in a complaint "must be enough to raise a right to relief above the speculative level" and

cannot "'merely create[] a suspicion [of] a legally cognizable right of action.'"   *Twombly*,

550 U.S. at 555 (citation omitted).   In other words, the complaint must allege enough facts

"to raise a reasonable expectation that discovery will reveal evidence" supporting a claim.

*Id.* at 556.   "Threadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice."   *Iqbal*, 556 U.S. at 678.

To state a claim for relief under § 1983, a plaintiff must allege that (1) an act or

omission deprived him of a right, privilege, or immunity secured by the Constitution or a

statute of the United States; and (2) the act or omission was committed by a person acting

under color of state law.   *Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1582 (11th Cir. 1995).

If a litigant cannot satisfy these requirements or fails to provide factual allegations in

support of his claim or claims, the complaint is subject to dismissal.   *See Chappell v. Rich*,

340 F.3d 1279, 1282-84 (11th Cir. 2003).

## II.    Factual Allegations

Plaintiff's claims arise from his detention at the Wilcox State Prison ("WSP").

Compl. 5, ECF No. 1.   According to the Complaint, Plaintiff was transferred to the prison

in mid-March of 2022.   *Id.*   Plaintiff contends that the conditions at WSP are deplorable.

He states he is "terrified of the amount of violence around [him]" and has observed that

"everyone has weapons and drugs . . . coming in at street level rate."   *Id.*   Indeed, Plaintiff

claims that he has witnessed "mass beatings of caucasion [sic] inmates daily," seen "two

separate killings," and "been in the middle of a stand of[f] between two gangs" in his dorm. *Id.* at 5-6.   Plaintiff also alleges that his dorm "is infested with mold and bugs," the isolation cells are covered in mold and feces, there is an uncontrolled leak in his sink, and the temperature in his cell is regularly over 100 degrees.   *Id.* at 6-8.   In addition, Plaintiff contends that he has been unable to obtain appropriate mental health care, medication refills, or a vegan diet.   *Id.* at 5-6, 9-10.   He also alleges that various prison officials have attempted to incite other inmates to harm him or have retaliated against him in other ways. *Id.* at 6-7, 10.   Plaintiff thus contends that his constitutional rights have been violated, and as a result he seeks a transfer to another prison, expungement of any negative reports from his prison records, injunctive relief, and compensatory damages.   *Id.* at 12.

### III.   Plaintiff's Claims

#### A.   Eighth Amendment Deliberate Indifference to Safety Claims

Plaintiff's Complaint gives rise to a claim that Defendants were deliberately indifferent to his safety at WSP.   This type of claim is generally cognizable under the Eighth Amendment to the United States Constitution.   *See, e.g., Farmer v. Brennan*, 511 U.S. 825, 837 (1994).   A prisoner asserting an Eighth Amendment failure-to-protect claim must allege (1) a substantial risk of serious harm; (2) the prison officials' deliberate indifference to that risk; and (3) causation.   *Goodman v. Kimbrough*, 718 F.3d 1325, 1331 (11th Cir. 2013).   To establish deliberate indifference in this context, a prisoner must show that prison officials subjectively knew of the substantial risk of serious harm and that the prison officials knowingly or recklessly disregarded that risk.   *Id.* at 1332.   The subjective

component of deliberate indifference requires a prisoner to allege facts showing that a prison official had "'more than a generalized awareness of risk'" to the prisoner.  *Marbury v. Warden*, 936 F.3d 1227, 1234 (11th Cir. 2019) (quoting *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1101-02 (11th Cir. 2014)).   The inmate can do this by pleading facts showing "that he was in an environment so beset by violence that confinement, by its nature, threatened him with the substantial risk of serious harm" or by providing prison officials with details about a specific threat sufficient "to enable them to conclude that it presents a 'strong likelihood' of injury, not a 'mere possibility.'"  *Id.* at 1235-36 (quoting *Brooks v. Warden*, 800 F.3d 1295, 1301 (11th Cir. 2015)).   The objective prong requires the prisoner to allege facts establishing that the prison official objectively "responded to the known risk in an unreasonable manner, in that he or she knew of ways to reduce the harm but knowingly or recklessly declined to act."   *Id.* (internal quotation marks omitted).

The only named Defendant who appears to have directly contributed to the danger faced by Plaintiff at WSP is Lieutenant Margaret Brown.  According to the Complaint, Defendant Brown harassed Plaintiff during chow call on June 14, 2022.   Compl. 6-7, ECF No. 1.   During this time, Defendant Brown also slammed a door shut on Plaintiff, striking him in the face, "wedging [his] toes in [the] door," and spilling Plaintiff's food.   *Id.* at 7. She then "snatched" Plaintiff's tray out of his hand and "tossed" it to the floor.   *Id.* Plaintiff also says that Defendant Brown began to "yell[] at the top of her lungs" to the other inmates that Plaintiff was a "pervert" who was "locked up" for having sex with

children. *Id.*[1]   As soon as he returned to his dorm, Plaintiff was confronted by four

inmates who were armed with knives questioned why Plaintiff was in jail and asked to see

his "conviction paperwork and ID," presumably to see if Defendant Brown's allegations

were true. *Id.*   Plaintiff also notes that threats against him are continuing. *See id.* at 10

(alleging that "someone put a note under []his cell door . . . . saying don't come on

compound").   Plaintiff thus contends that Defendant Brown's actions "have put [his] life

in danger in general population." *Id.* at 7.   These allegations are sufficient, at this early

stage, to permit Plaintiff's Eighth Amendment claims to proceed for further factual

development. *See, e.g., Harmon v. Berry*, 728 F.2d 1407, 1409 (11th Cir. 1984) (holding

that prisoner's claims that "prison officials have labeled him a snitch and are exposing him

to inmate retaliation" were sufficient to survive preliminary screening).

The remaining Defendants appear to be supervisory prison officials.[2]   It is well-

settled in the Eleventh Circuit that supervisory officials are not liable under § 1983 for the

---

[1] A search of the Georgia Department of Corrections' online offender query shows that Plaintiff was convicted of aggravated assault and possession of a firearm by a convicted felon. *See* https://gdc.ga.gov/GDC/Offender/Query (searched Vass, Christopher) (last accessed Oct. 4, 2022).

[2] In addition to Defendant Brown, Plaintiff has named the following individuals as Defendants in this action:   Lawrence Whittingham, WSP Warden; Timothy Ward, GDC Commissioner; Ann Bowen, GDC Medical Director; Ioannis Iannoo, GDC Mental Health Director; Latasha Cobb, a WSP unit manager; Ahmed Holt, GDC Commissioner of Facilities; Robert Toole, GDC Director of Field Operations; Stan Sheppard, GDC Regional Director; Joseph Burnette, a WSP Deputy Warden; Evon Walker, GDC Food Director; Jack Sauls, GDC Commissioner of Health Service; Spin, a WSP deputy warden; and Tavares King, a WSP captain.

unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability. *See, e.g., Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003). Rather, supervisors can only be held liable under § 1983 if they personally participated in unconstitutional conduct or if there is a causal connection between their actions and the alleged constitutional violation. *See, e.g., Hendrix v. Tucker*, 535 F. App'x 803, 805 (11th Cir. 2013) (per curiam). A causal connection can be established if

> (1) a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation and he fail[ed] to do so; (2) the supervisor's improper custom or policy le[d] to deliberate indifference to constitutional rights; or (3) facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so.

*Id.* "The standard by which a supervisor is held liable in her individual capacity for the actions of a subordinate is extremely rigorous." *Id.* (internal quotation marks omitted).

Plaintiff's allegations give rise to claims that the supervisory Defendants in this action were deliberately indifferent to his safety because they failed to control the level of violence at WSP. Plaintiff states that weapons are so prevalent at the facility that an "unknown man" gave Plaintiff a knife and told him "you have to fight or die," and he has witnessed multiple assaults, two inmate deaths, and a "standoff" over the course of approximately four months. Compl. 6, ECF No. 1. Although Plaintiff does not clearly state which named Defendant is associated with these claims, it is reasonable to infer that Defendant Whittingham—the WSP warden—knows about these conditions and would be in a position to reduce the harm presented by them. Plaintiff also generally states that he

complained to Defendant Whittingham about the issues in his Complaint.   Compl. 3, ECF No. 1.   Plaintiff's claims that Defendant Whittingham was deliberately indifferent to the substantial risk of harm posed by the levels of inmate-on-inmate violence at WSP shall therefore proceed for further factual development.   Plaintiff has not clearly alleged that the remaining Defendants—many of whom are Georgia Department of Corrections officials who would not be involved in the day-to-day operations of WSP—knew of the conditions at WSP and knowingly or recklessly declined to act.   As such, Plaintiff has failed to state an actionable claim against these Defendants at this time, and those claims should be dismissed accordingly.

### B. Eighth Amendment Medical Treatment Claims

Plaintiff also suggests that he has not received adequate medical care or mental health treatment at WSP.   Plaintiff states that he has requested mental health assistance in writing "multiple times and still ha[s] not seen [a] mental health counselor."   Compl. 5, ECF No. 1.   Plaintiff also indicates that he requested a vegan meal plan for medical reasons but has not been provided with vegan meals.   *See id.* at 5 (stating that he "was charged 4 to 5 times for medical visit for vegan meal").   Finally, Plaintiff states that he has not received breathing treatments or a refill of his allergy medication despite requesting these items multiple times.   *Id.* at 6, 10-11.   Plaintiff explains that he has asthma, and therefore it is "vital" for him to have his allergy medication during the spring allergy season.   *Id.* at 6.

Plaintiff's allegations could give rise to claims that Defendants were deliberately

indifferent to his serious medical needs in violation of the Eighth Amendment to the United States Constitution.   *See Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003).   To show that a state actor was deliberately indifferent to his serious medical needs, "a plaintiff must satisfy both an objective and a subjective inquiry."   *Id.* at 1243.   A plaintiff must first "set forth evidence of an objectively serious medical need*"* and then prove that the defendant "acted with an attitude of 'deliberate indifference' to that serious medical need."   *Id.*   In other words, the defendant must both "know of and then disregard an excessive risk to the prisoner."   *Dunn v. Martin*, 178 F. App'x 876, 877 (11th Cir. 2006) (per curiam).   For purposes of this analysis, a "serious medical need" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."   *Farrow*, 320 F.3d at 1243 (internal quotation marks omitted).   A serious medical need can also arise if "a delay in treating the need worsens the condition."   *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1307 (11th Cir. 2009).   "In either case, 'the medical need must be one that, if left unattended, poses a substantial risk of serious harm.'"   *Id.* (quoting *Farrow*, 320 F.3d at 1243).

In this case, Plaintiff has not identified a diagnosis, described any of his symptoms, or otherwise explained why he requires mental health care or a vegan meal plan.   *Leonard v. Monroe Cnty Fla.*, 789 F. App'x 848, 851 (11th Cir. 2019) (per curiam) (holding that prisoner failed to allege facts sufficient to show that he had a serious medical need when he "alleged only that he was 'misdiagnosed' with Hepatitis C and was denied follow up medical care" but "alleged no facts about his medical condition or symptoms").   Because

11

he has failed to allege facts demonstrating that he has a serious medical need, his claims concerning his mental health care and his medically required vegan meals should be dismissed.  *See id.*

On the other hand, Plaintiff's allegations that he has asthma and requires allergy medication and breathing treatments could demonstrate that he has a serious medical need. It is not clear from Plaintiff's pleadings, however, which named Defendants were involved or whether they were deliberately indifferent to this need.   Plaintiff alleges that he notified Mr. McDuffy that he had not received his medication refill, and Mr. McDuffy called "medical."  Compl. 6, ECF No. 1.  "Medical" reported that they had not yet refilled Plaintiff's prescription because they were short-staffed.  *Id.*  Mr. McDuffy is not named as a Defendant in this action, and it also appears that he took prompt action when Plaintiff advised him of the problem.   Plaintiff does not allege to whom he complained about breathing treatments.  *See id.* at 11.   It is also unclear from the Complaint how long Plaintiff was without medication or breathing treatments or that the delay caused Plaintiff any adverse effects.   And Plaintiff does not allege any facts supporting a claim for supervisory liability against Defendant Bowen, the GDC's medical director.   Plaintiff's medical treatment claims are therefore too vague and conclusory to state a claim upon which relief may be granted, and they should be dismissed without prejudice.

C.  Eighth Amendment Conditions-of-Confinement Claims

Plaintiff also alleges that various conditions of his confinement at WSP violate his Eighth Amendment rights.   It is well-established that even though "the Constitution does

not mandate comfortable prisons," a prisoner's claim that the conditions of his confinement constitute cruel and unusual punishment may state a claim for relief under the Eighth Amendment.   *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981).   To state a conditions-of-confinement claim, a prisoner must show that the deprivations he suffers are objectively and sufficiently "serious" or "extreme" so as to constitute a denial of the "minimal civilized measure of life's necessities."   *Thomas v. Bryant*, 614 F.3d 1288, 1304 (11th Cir. 2010); *see also Brooks v. Warden*, 800 F.3d 1295, 1303-04 (11th Cir. 2015).   This standard is only met when the challenged conditions pose "an unreasonable risk of serious damage to [the prisoner's] future health or safety," *Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004) (internal quotation marks omitted), or if society "considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk," *Helling v. McKinney*, 509 U.S. 25, 36 (1993). The prisoner must also show that prison officials acted with deliberate indifference, i.e., that the officials knew that the challenged conditions posed an excessive risk to the prisoner's health or safety but disregarded them.   *Swain v. Junior*, 958 F.3d 1081, 1088-89 (11th Cir. 2020).

At this stage, Plaintiff has met his burden of alleging facts that would show that the conditions of his confinement are sufficiently serious to rise to the level of a constitutional violation.   Plaintiff contends that the dorms are "infested with mold and bugs," Compl. 6, ECF No. 1; that the sink in his current cell is "running and is spraying on the floor uncontrollably," *id.* at 8; that temperatures exceed 100 degrees in the cell, *id.* at 8, 11; and

that "food and human waste are stuck" to the walls of his cell, *id.* at 11.   In addition, Plaintiff has only been permitted to shower once since he has been confined in the segregation unit.   *Id.* at 8.[3]   Plaintiff further contends that these conditions have caused him to suffer from physical symptoms:   "ants have bitten [him] all over [his] body" and destroyed food kept in his assigned locker, *id.* at 6; that the mildew smell is "overwhelming" and has caused him to have breathing difficulties, *id.* at 8; and that the heat causes him to be "light headed," *id.*, and that he has develop a skin rash, *id.*   Plaintiff has also alleged that he complained to Defendants Whittingham, King, and Burnette about these issues.   Compl. 4, 6, 9, ECF No. 1.[4]   Plaintiff's Eighth Amendment conditions of confinement claims shall therefore proceed against these three Defendants.

Plaintiff also has several additional complaints about the conditions of his confinement that do not rise to the level of a constitutional claim.   First, Plaintiff states he has not received yard call since he has been in segregation.   This allegation, standing alone, does not state an actionable claim.   This Circuit has "never held that convicted prisoners have a constitutional right to outdoor exercise."   *Jones v. Diamond*, 594 F.2d 997, 1013 (5th Cir. 1979), *on reh'g*, 636 F.2d 1364 (5th Cir. 1981).   Thus, "a complete

---

[3] Plaintiff was placed in segregation on or about June 15, 2022.   Compl. 7-8, ECF No. 1. He signed his Complaint in this case on or about June 27, 2022.   *Id.* at 13.

[4] Plaintiff also states that he complained to several other individuals about these issues, but Plaintiff did not name those individuals as Defendants in this action.   *See, e.g.,* Compl. 4, 8, 9, ECF No. 1.

denial . . . of outdoor exercise, although harsh," does not necessarily violate the Eighth Amendment. *Bass v. Perrin*, 170 F.3d 1312, 1317 (11th Cir. 1999). Plaintiff's conclusory allegation that he was deprived of yard call for less than two weeks therefore does not state a constitutional claim.

Second, Plaintiff complains that he does not have access to kiosk messaging or a telephone in segregation. Compl. 9, ECF No. 1. To the extent Plaintiff is claiming that the lack of kiosk or telephone access violates his constitutional rights, he has failed to state a claim. Though "prison inmates retain a right under the First Amendment to send and receive information while incarcerated they do not have a constitutional right to a particular form of communication[.]" *Edwards v. N.Y. State Dep't of Corr. & Cmty. Supervision*, 2019 WL 1978803, at *5 (N.D.N.Y. May 3, 2019) (internal citations omitted). Thus, federal courts have routinely held that prisoners have no per se constitutional right to "telephones, videoconferencing, email, or any of the other marvelous forms of technology that allow instantaneous communication across geographical distances; the First Amendment is a limit on the exercise of governmental power, not a source of positive obligation on the part of the government." *Holloway v. Magness*, No. 5:07CV00088 JLH-BD, 2011 WL 204891, at *7 (E.D. Ark. Jan. 21, 2011); *see also Holt v. Bright*, No. 4:19CV01438, 2020 WL 224575, at *3 (N.D. Ohio Jan. 15, 2020) ("[W]hile prisoners have a First Amendment right to communicate with the outside world, they do not have a constitutional right to a particular form of communication, such as access to email or telephone."); *Edington v. Warden of FCI Elkton*, No. 4:14CV2397, 2015 WL 1843240, at

15

*3 (N.D. Ohio Apr. 22, 2015) (finding that prisoners "do not have a constitutional right to a particular form of communication, such as access to email"); *Stratton v. Speanek*, Civil Action No. 14-CV-120-HRW, 2014 WL 6705394, at *3 & n.2 (E.D. Ky. Nov. 26, 2014) (finding that "benefits made available to prisoners," which included "the use of e-mail correspondence, are merely . . . institutional privileges, not constitutionally protected rights" and collecting cases).   Plaintiff has not alleged that he has no means of communicating with the outside world—he clearly has access to mail—and thus any potential First Amendment claims should be dismissed.

Third, Plaintiff claims that he is only allowed to spend $20.00 a week at the commissary.   Compl. 9, ECF No. 1.   Plaintiff also does not have a constitutional right to commissary purchases.   *See, e.g., Tokar v. Armontrout*, 97 F.3d 1078, 1083 (8th Cir. 1996) ("[W]e note that we know of no constitutional right of access to a prison gift or snack shop."); *Hayes v. TSG Commissary*, Case No. 8:22-cv-798-TPB-AAS, 2022 WL 1104117, at *1 (M.D. Fla. Apr. 13, 2022) (observing that "it is well-settled that prisoners have no constitutional right of access to or use of a jail or prison commissary").   These claims should therefore be dismissed.

Finally, Plaintiff alleges that he has been deprived of food on three occasions. Compl. 9-10, ECF No. 1.   Plaintiff states that he did not receive a breakfast tray on June 23, 2022, and his lunch tray on that same day "had trash in it" and contained foods that did not correspond to his allergy profile.   *Id.* at 9.   Plaintiff also states that he did not receive a vegan meal tray on June 25, 2022.   *Id.* at 9-10.   Because "[t]he Constitution requires

16

that prisoners be provided reasonably adequate food," an inmate may state a constitutional claim if he is not provided with sufficient sustenance to maintain his health.  *See Hamm v. DeKalb Cnty.*, 774 F.2d 1567, 1575 (11th Cir. 1985) (internal quotation marks and citations omitted); *see also LeMaire v. Maass*, 12 F.3d 1444, 1456 (9th Cir. 1993) ("The Eighth Amendment requires only that prisoner receive food that is adequate to maintain health; it need not be tasty or aesthetically pleasing.").  Plaintiff has not alleged that the amount of food he has received at WSP—as a whole—is insufficient to maintain his health. Moreover, Plaintiff does not plead any facts suggesting that his food is contaminated with "trash" or other substances on a regular basis, and "[t]he fact that the food occasionally contains foreign objects . . . while unpleasant, does not amount to a constitutional violation."  *Hamm*, 774 F.2d at 1575.  Plaintiff has therefore failed to allege facts sufficient to state an Eighth Amendment claim based on deprivation of food, and these claims should be dismissed without prejudice.

D.  Retaliation Claims

Plaintiff also alleges that Defendant Brown retaliated against him by filing a disciplinary report against Plaintiff after he filed a PREA report and grievance against her. Compl. 10, ECF No. 1.  It is well established that an adverse action imposed in retaliation for a prisoner's exercise of a constitutionally protected right is actionable.  *Wildberger v. Bracknell*, 869 F.2d 1467, 1468 (11th Cir. 1989) (per curiam).  To state a retaliation claim, an inmate generally needs to show that he engaged in protected conduct; that the prison official's retaliatory conduct adversely affected the protected conduct; and a causal

connection between the protected conduct and the adverse action.   *See, e.g., Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011).   In this case, Plaintiff contends that Defendant Brown falsely accused Plaintiff of threatening her and filed the "frivolous" disciplinary report the day after Plaintiff filed his PREA report and grievance.   Compl. 10, ECF No. 1.   At this early stage, the Court cannot say that these claims are entirely frivolous.   Plaintiff's retaliation claims against Defendant Brown shall therefore proceed for further factual development.

E.   <u>Motion to Remove/Expunge Negative Entries from Prison Records</u>

Plaintiff has also filed a motion requesting that the Court "remove and expunge any negative entries that have been placed on or in my prison records because of my civil suit claim(s) or the actions I'm sueing [sic] about."   Mot. to Expunge 1, ECF No. 5.   The Court notes that Plaintiff also requests this relief in his Complaint.   Compl. 12, ECF No. 1.   As such, Plaintiff's motion should be **DENIED as moot.**

**IV.     Conclusion**

As discussed herein, Plaintiff's motion for leave to proceed *in forma pauperis* (ECF No. 2) is **GRANTED**, and his deliberate indifference to safety claims against Defendants Brown and Whittingham, his conditions-of-confinement claims against Defendants Whittingham, King, and Burnette, and his retaliation claims against Defendant Brown shall proceed for further factual development.   It is **RECOMMENDED,** however, that Plaintiff's remaining claims be **DISMISSED without prejudice** and that his motion for an expungement (ECF No. 5) be **DENIED as moot.**

18

**OBJECTIONS**

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to these recommendations with the Honorable Marc T. Treadwell, Chief United States District Judge, **WITHIN FOURTEEN (14) DAYS** after being served with a copy of this Recommendation.   Any objection is limited in length to **TWENTY (20) PAGES**.   *See* M.D. Ga. L.R. 7.4.   The parties may seek an extension of time in which to file written objections, provided a request for an extension is filed prior to the deadline for filing written objections.   Failure to object in accordance with the provisions of § 636(b)(1) waives the right to challenge on appeal the district judge's order based on factual and legal conclusions to which no objection was timely made.   *See* 11th Cir. R. 3-1.

**ORDER FOR SERVICE**

Having found that Plaintiff has made colorable constitutional violation claims against Defendants Brown, Whittingham, King, and Burnette, it is accordingly **ORDERED** that service be made on those Defendants and that they file an Answer, or such other response as may be appropriate under Rule 12, 28 U.S.C. § 1915, and the Prison Litigation Reform Act.   Defendants are reminded of the duty to avoid unnecessary service expenses, and of the possible imposition of expenses for failure to waive service pursuant to Rule 4(d).

**DUTY TO ADVISE OF ADDRESS CHANGE**

During the pendency of this action, all parties shall keep the Clerk of this Court and all opposing attorneys and/or parties advised of their current address.   Failure to promptly

advise the Clerk of a change of address may result in the dismissal of a party's pleadings.

## DUTY TO PROSECUTE ACTION

Plaintiff is also advised that he must diligently prosecute his Complaint or face the possibility that it will be dismissed under Rule 41(b) of the Federal Rules of Civil Procedure for failure to prosecute.   Defendants are similarly advised that they are expected to diligently defend all allegations made against them and to file timely dispositive motions as hereinafter directed.   This matter will be set down for trial when the Court determines that discovery has been completed and that all motions have been disposed of or the time for filing dispositive motions has passed.

## FILING AND SERVICE OF MOTIONS, PLEADINGS, AND CORRESPONDENCE

It is the responsibility of each party to file original motions, pleadings, and correspondence with the Clerk of Court.   A party need not serve the opposing party by mail if the opposing party is represented by counsel.   In such cases, any motions, pleadings, or correspondence shall be served electronically at the time of filing with the Court.   If any party is not represented by counsel, however, it is the responsibility of each opposing party to serve copies of all motions, pleadings, and correspondence upon the unrepresented party and to attach to said original motions, pleadings, and correspondence filed with the Clerk of Court a certificate of service indicating who has been served and where (i.e., at what address), when service was made, and how service was accomplished.

## DISCOVERY

20

Plaintiff shall not commence discovery until an answer or dispositive motion has been filed on behalf of the Defendant from whom discovery is sought by the Plaintiff.   The Defendants shall not commence discovery until such time as an answer or dispositive motion has been filed.   Once an answer or dispositive motion has been filed, the parties are authorized to seek discovery from one another as provided in the Federal Rules of Civil Procedure.   The deposition of the Plaintiff, a state/county prisoner, may be taken at any time during the time period hereinafter set out provided prior arrangements are made with his custodian.   **Plaintiff is hereby advised that failure to submit to a deposition may result in the dismissal of his lawsuit under Rule 37 of the Federal Rules of Civil Procedure.**

IT IS HEREBY ORDERED that discovery (including depositions and the service of written discovery requests) shall be completed within 90 days of the date of filing of an answer or dispositive motion by the Defendants (whichever comes first) unless an extension is otherwise granted by the court upon a showing of good cause therefor or a protective order is sought by the defendant and granted by the court.   This 90-day period shall run separately as to Plaintiff and Defendants beginning on the date of filing of Defendants' answer or dispositive motion (whichever comes first). The scheduling of a trial may be advanced upon notification from the parties that no further discovery is contemplated or that discovery has been completed prior to the deadline.

Discovery materials shall not be filed with the Clerk of Court.   No party shall be required to respond to any discovery not directed to him/her or served upon him/her by the

opposing counsel/party.   The undersigned incorporates herein those parts of the **Local Rules** imposing the following limitations on discovery:   except with written permission of the court first obtained, **interrogatories** may not exceed TWENTY-FIVE (25) to each party, **requests for production of documents and things** under Rule 34 of the Federal Rules of Civil Procedure may not exceed TEN (10) requests to each party, and **requests for admissions** under Rule 36 of the Federal Rules of Civil Procedure may not exceed FIFTEEN (15) requests to each party.   No party shall be required to respond to any such requests which exceed these limitations.

### REQUESTS FOR DISMISSAL AND/OR JUDGMENT

The Court shall not consider requests for dismissal of or judgment in this action, absent the filing of a motion therefor accompanied by a brief/memorandum of law citing supporting authorities.   Dispositive motions should be filed at the earliest time possible, but in any event no later than one hundred - twenty (120) days from when the discovery period begins unless otherwise directed by the Court.

**SO ORDERED AND RECOMMENDED**, this 21st day of October, 2022.


s/ Charles H. Weigle_____
Charles H. Weigle
United States Magistrate Judge